IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

NATHANIEL LEKAI HART,      *

     Petitioner,       *

v.           *      Civil Action No. GLR-19-3476

THE ATTORNEY GENERAL OF THE   *
STATE OF MARYLAND,

               *

     Respondent.

             ***

## MEMORANDUM OPINION

THIS MATTER is before the Court on Petitioner Nathaniel Lekai Hart's Petition for Writ of Habeas Corpus (ECF No. 1). The matter is ripe for review, and no hearing is necessary. See R. Govern. § 2254 Cases U.S. Dist. Ct. 8(a); 28 U.S.C. § 2254(e)(2); Local Rule 105.6 (D.Md. 2023); see also Fisher v. Lee, 215 F.3d 438, 454–55 (4th Cir. 2000). For the reasons outlined below, the Petition will be dismissed, and no certificate of appealability will be issued.

## I.     BACKGROUND

### A.   Proceedings in Indictment No. 115124

On March 5, 2010, Hart was indicted in the Circuit Court for Montgomery County with two counts of first-degree rape, one count of first-degree sex offense, and two counts of false imprisonment. (App. of State R. Materials ["State R."] at 8, ECF No. 10-1).[1] On

---

[1] Citations to page numbers refer to the pagination assigned by the Court's Case Management/Electronic Case Files ("CM/ECF") system.

March 29, 2010, Myra Kovach and Theresa Chernosky entered an appearance as Hart's counsel of record. (Id. at 11). An initial appearance hearing was held on April 9, 2010. (Id.). The record reflects that Kovach appeared, but Hart was not present. (Id.). On January 28, 2011, the Circuit Court held a plea hearing, where Hart pled guilty to one count of rape. (Id. at 16–17); (Plea Hr'g Tr. ["Jan. 28, 2011 Plea Hr'g"] at 4–8, ECF No. 10-2). The Circuit Court sentenced Hart to life imprisonment, all but 90 years suspended. (July 15, 2011 Sentencing Hr'g Tr. ["First Sentencing"] at 39, ECF No. 10-3).

Hart appealed his conviction to the Appellate Court of Maryland. (State R. at 19, 69–73). On October 22, 2012, the Appellate Court of Maryland issued an unreported opinion vacating Hart's conviction and sentence, finding that the Circuit Court breached the plea agreement. (Id. at 83–92). On remand, Hart was resentenced to life imprisonment, all but 38 years suspended. (Id. at 22).

Hart filed a petition for postconviction relief, alleging, inter alia, that his guilty plea after remand from the Appellate Court of Maryland was not knowing and intelligent, his sentence was illegal, and his counsel was ineffective for failing to advise him that he could have withdrawn his guilty plea after his case was remanded. (Id. at 94–98). At a hearing on May 5, 2016, the Circuit Court granted Hart's petition, finding that Hart's guilty plea was not knowing and intelligent. (Id. at 99–101).

## B.   Proceedings in Indictment No. 130198

The state re-indicted Hart under a new case number, docket No. 130198, charging him with two counts of first-degree rape, one count of first-degree sex offense, and one count of false imprisonment. (Id. at 53, 55). On September 9, 2016, Hart appeared in court

with counsel for an initial appearance and the Circuit Court granted the State's motion to consolidate the two case numbers. (Id. at 55).

On July 14, 2016, the Circuit Court held a hearing to address a letter Hart transmitted to the court expressing a desire to discharge his appointed counsel. (July 14, 2016 Mots. Hr'g Tr. at 1–13, ECF No. 10-4). Hart asked for a new attorney from the public defender's office, complaining that his counsel, Chernosky, had been ineffective during his plea proceedings on remand and was also not present when the warrant was executed to obtain the buccal swab for his DNA. (Id. at 7–9). The Circuit Court advised Hart that it could not assign him a different attorney from the public defender's office and he would have to either hire his own counsel or represent himself. (Id. at 9–10). The Circuit Court acknowledged that another attorney was standing in for Chernosky and decided to defer Hart's request to provide him with an opportunity to meet with Chernosky to make a final decision on discharging her services. (Id. at 11–12). The Circuit Court further advised Hart that it was in his best interest to be represented by counsel and he had not articulated a good reason for his counsel to be discharged. (Id. at 12–13).

The Circuit Court revisited the issue on August 25, 2016. (Aug. 25, 2016 Mots. Hr'g Tr. at 1–7, ECF No. 10-5). Hart advised that he wanted a different attorney from the public defender's office or, "I will represent myself until I can find the money to pay for an attorney on my own, but until then, I'll represent myself." (Id. at 5). The Circuit Court warned Hart that if he discharged Chernosky, no new counsel would be appointed from the public defender's office, and he would have to hire a new attorney or represent himself. (Id. at 6–7). After Hart confirmed that he understood he would receive no assistance from

3

the public defender's office, he stated again that he wanted to fire his counsel. (Id. at 7). The Circuit Court granted his request. (Id.).

Hart asked for a continuance of the trial date at a hearing on September 23, 2016. (Sept. 23, 2016 Mots. Hr'g Tr. at 4–5, ECF No. 10-8). Per Hart's request, Chernosky appeared at the hearing and advised the Circuit Court that she was available to represent him at trial but had a conflict with the scheduled date. (Id. at 4). Hart told the Circuit Court that he wanted Chernosky to represent him, but the court denied his request for a continuance. (Id. at 11–19).

Hart represented himself during a jury trial held October 11–12, 2016. (Oct. 11, 2016 Jury Trial Proc., ECF No. 10-9; Oct. 12, 2016 Jury Trial Proc., ECF No. 10-10). The Appellate Court of Maryland found that the following facts were adduced at trial:

> On January 26, 2010, at approximately 2:00 p.m., E.N., a student at Montgomery College's campus in Silver Spring, went to the restroom following the end of her first class. She was alone for roughly ten minutes when an individual, later identified as Hart, laid on his back and slid into her locked bathroom stall. His face was partially obscured with a scarf, but E.N. could see the top of his face and eyes and later recalled that he wore light blue jeans and an off-white button up shirt.
>
> E.N. told Hart that the stall was occupied, and he slid back out of the stall; however, as she tried to leave, Hart slid back beneath the partition, stood up, and began kissing her neck and "all over" her. E.N. repeatedly said that she was menstruating in an effort to prevent an assault, but he replied, "[S]top talking, stop talking, don't move, I have a gun, stop talking, I'll hurt you." Although she did not observe a gun, E.N. "could literally feel the whole shape of the gun[]" in his jeans pocket. Hart then ripped the clothing from the lower half of her body and raped her vaginally.

After the initial attack, Hart told E.N. to face the wall while he cleaned his blood from the floor and stall before giving her paper towels to clean herself. E.N. testified that as she faced the wall, Hart sat down on the other side of the stall, faced away from her, and talked about "his relationship with God and[] how he wouldn't be forgiven[.]" While his back was turned, E.N. began sending text messages to her sister and others that she had been raped and provided her location. E.N first texted for help at 3:02 p.m., and she continued to text for help until 3:35 p.m.

E.N. was then allowed to leave the stall to wash her face at the sink. When she asked to leave the restroom, Hart told her to return to the stall, where he approached her from behind. After E.N. refused to bend over, Hart ripped her pants down and forced his penis partially into her anus. The pain caused her to scream at him to stop, at which point Hart raped her vaginally a second time.

Security camera footage revealed that Hart left the building at 3:23 p.m. At 3:38 p.m., 9-1-1 received a call reporting a rape, and officers responded to scene and began searching for the man. Sergeant Larry Haley, who was then a detective with the Montgomery County Police, identified Hart as a suspect after speaking with a security guard at Montgomery College who had photocopied Hart's I.D. a week prior amid a complaint that Hart was sleeping in the women's bathroom. Sgt. Haley was then able to confirm that Hart was on the security footage.

Detective Patrick Skiba, who was searching for the suspect in hotels, garages, and cars near the college, pulled into a nearby Days Inn and noticed that a door to a room on the second floor was slightly ajar. After determining that the room was not rented, Det. Skiba and another officer entered and found Hart asleep on a bed. Police took Hart into custody at approximately 8:45 p.m.; he was wearing jeans and a shirt that appeared to have dried blood on its front.

E.N.'s medical report indicated that she sustained six or seven acute vaginal tears consistent with a penetrating injury. DNA analysis demonstrated that E.N.'s vaginal cervical swab was positive for spermatozoa and her rectal swab was positive for a sperm fraction, and that Hart was the source of that foreign

> DNA. While in custody, Hart underwent a penile swab, the examination of which revealed the presence of E.N.'s DNA.

(State R. at 220–22).

Hart was convicted of two counts of first-degree rape, one count of first-degree sex offense, and one count of false imprisonment. (Oct. 12, 2016 Jury Trial Proc. at 170–71). Hart was sentenced to life imprisonment plus one hundred twenty years. (Dec. 9, 2016 Sentencing Hr'g Tr. ["Second Sentencing"] at 23, ECF No. 10-11).

Hart appealed his conviction and sentence to the Appellate Court of Maryland, asserting three assignments of error: (1) the lower court erred by failing to comply with the requirements of Maryland Rule 4-215(e); (2) the lower court abused its discretion by denying [Hart's] request for a postponement for the purpose of allowing his former attorney to re-enter the case; and (3) the trial court committed plain error in instructing the jury about [Hart's] self-representation. (State R. at 136–65). The Appellate Court of Maryland affirmed Hart's conviction and sentence in an opinion dated August 20, 2018. (Id. at 218–43). Hart did not seek a petition for a writ of certiorari with the Supreme Court of Maryland.

C.    **Postconviction Proceedings**

Hart filed a petition for postconviction relief in the Circuit Court for Montgomery County on February 25, 2022. (App. of Suppl. State R. Documents ["Suppl. State R."] at 22–30, ECF No. 44-1). He asserted: (1) the government was barred from reinstating the initial charges because the statute of limitations ran, and (2) he was denied an initial appearance under Maryland Rule 4-213©. (Id.). The Circuit Court summarily dismissed the petition to the extent the claims were associated with docket No. 115124, as those

charges were all entered <u>nolle prosequi</u>. (<u>Id.</u> at 35). The Circuit Court held a hearing on June 22, 2023 on the claims associated with docket No. 13098, (<u>id.</u> at 37–82), and issued an order on July 11, 2023, dismissing Hart's petition, (<u>id.</u> at 36). The Appellate Court of Maryland denied Hart's application for leave to appeal. (<u>Id.</u> at 83–96, 100–102).

**D.**   <u>**Procedural History**</u>

On December 14, 2019, Hart filed the instant petition for federal habeas corpus relief. (ECF No. 1). Respondent requested a more definite statement on February 27, 2020, (ECF No. 6), to which Hart responded on March 25, 2020, and May 22, 2020, (ECF Nos. 9, 12).

Respondent filed an Answer on April 28, 2020. (ECF No. 10). On May 10, 2021, the Court issued an Order staying this matter to permit Hart to complete his ongoing postconviction proceedings in the Circuit Court for Montgomery County. (May 10, 2021 Order, ECF No. 24).

On April 18, 2024, the Court issued an Order directing Respondent to supplement the state court record and directing Hart to file a supplemental memorandum addressing any claims that he may have exhausted since he filed his federal habeas petition. (Apr. 18, 2024 Order, ECF No. 42). On April 22, 2024, Hart responded, advising the Court that he only wished to proceed on Ground One (alleging that his initial appearance violated Maryland Rule 4-213 in Case No. 115124) and Ground Three (alleging that his Sixth

Amendment right to counsel was violated in Case No. 130198). (Pet'r's Correspondence, ECF No. 43-1). [2]

## II.    DISCUSSION

### A.    <u>Procedural Default</u>

Before seeking review under 28 U.S.C. § 2254, a person in custody must exhaust remedies available in state court by presenting each claim to the appropriate state court. A claim is procedurally defaulted when a petitioner has failed to present the claim to the highest state court with jurisdiction to hear it, whether it be by failing to raise the claim in post-conviction proceedings or on direct appeal, or by failing to timely note an appeal. <u>See</u> <u>Coleman v. Thompson</u>, 501 U.S. 722, 749–50 (1991) (failure to note timely appeal); <u>Murray v. Carrier</u>, 477 U.S. 478, 489–91 (1986) (failure to raise claim on direct appeal); <u>Murch v. Mottram</u>, 409 U.S. 41, 46 (1972) (failure to raise claim during post-conviction proceedings); <u>Bradley v. Davis</u>, 551 F.Supp. 479, 481 (D.Md. 1982) (failure to seek leave to appeal denial of post-conviction relief).

A procedural default may also occur where a state court declines "to consider the merits [of a claim] on the basis of an adequate and independent state procedural rule." <u>Yeatts v. Angelone</u>, 166 F.3d 255, 260 (4th Cir. 1999). As the United States

---

[2] Respondent supplemented the record on May 20, 2024 (Supp. State R. Line ["Supp. Line"], ECF No. 44) but declined the Court's invitation to file a response to Hart's supplemental memorandum. Respondent argued in its Answer that Ground One was procedurally defaulted because it was not raised in any state court proceeding. (Answer at 20, ECF No. 10). However, since that pleading was filed, Hart raised Ground One in a postconviction petition (Suppl. State R. at 27–28), which he appealed to the Appellate Court of Maryland, (<u>id.</u> at 100–02). Ground One is therefore not procedurally defaulted and will be addressed on the merits.

Court of Appeals for the Fourth Circuit has explained, "if a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim." Breard v. Pruett, 134 F.3d 615, 619 (4th Cir. 1998) (citing Coleman, 501 U.S. at 731–32). Under Maryland law, "an allegation of error is waived when a petitioner could have made, but intelligently and knowingly failed to make the allegation . . . in a prior [post-conviction] petition." Md. Code Ann., Crim. Proc. § 7-106(b)(1). A rebuttable presumption exists that this waiver was knowing and intelligent. Id. § 7-106(b)(2).

Respondent contends that Ground Three was not exhausted and accordingly is procedurally defaulted because Hart failed to present it to the state courts. (Answer at 20, ECF No. 10). The Court disagrees. Hart argued in his brief to the Appellate Court of Maryland on direct appeal that the trial court violated his Sixth Amendment right to counsel (State R. at 150), and the Appellate Court of Maryland addressed the Sixth Amendment claim in its opinion, (id. at 232–33). Thus, Hart did not fail to present the claim to any state court as argued by Respondent, and the Court will address Ground Three on the merits.[3]

## B.   **Merits Review**

An application for writ of habeas corpus may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). The federal habeas statute

---

[3] Respondent does not argue that Ground Three is procedurally defaulted because Hart failed to file a petition for certiorari with the Supreme Court of Maryland.

sets forth a "highly deferential standard for evaluating state-court rulings." Lindh v. Murphy, 521 U.S. 320, 333 n.7 (1997); Bell v. Cone, 543 U.S. 447, 455 (2005). The standard is "difficult to meet" and requires courts to give state-court decisions "the benefit of the doubt." Cullen v. Pinholster, 563 U.S. 170, 181 (2011) (citation omitted); see also White v. Woodall, 572 U.S. 415, 419–20 (2014) (finding that a state prisoner must show that the state court ruling on the claim presented in federal court was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement") (quoting Harrington v. Richter, 562 U.S. 86, 101 (2011))).

A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state adjudication is contrary to clearly established federal law under § 2254(d)(1) where the state court (1) "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or (2) "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]." Williams v. Taylor, 529 U.S. 362, 405 (2000) (citation omitted).

Under the "unreasonable application" analysis under § 2254(d)(1), a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded

jurists could disagree' on the correctness of the state court's decision." <u>Harrington</u>, 562 U.S. at 101 (quoting <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664 (2004)). Thus, "an <u>unreasonable</u> application of federal law is different from an <u>incorrect</u> application of federal law." <u>Id.</u> (quoting <u>Williams</u>, 529 U.S. at 410).

Further, under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." <u>Wood v. Allen</u>, 558 U.S. 290, 301 (2010) (citing <u>Rice v. Collins</u>, 546 U.S. 333, 341–42 (2006)). Thus, "even if reasonable minds reviewing the record might disagree about the finding in question," a federal habeas court may not conclude that the state court decision was based on an unreasonable determination of the facts. <u>Id.</u> (internal quotation marks omitted). Similarly, "a federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." <u>Renico v. Lett</u>, 559 U.S. 766, 773 (2010) (quoting <u>Williams</u>, 529 U.S. at 411).

The habeas statute provides that "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." <u>Sharpe v. Bell</u>, 593 F.3d 372, 378 (4th Cir. 2010). This is especially true where state courts have "resolved issues like witness credibility, which are

'factual determinations' for purposes of Section 2254(e)(1)." Id. (quoting Wilson v. Ozmint, 352 F.3d 847, 858 (4th Cir. 2003)).

### 1.      Ground One: Initial Appearance violated Maryland Rule 4-213

In Ground One, Hart claims that the trial court violated Maryland Rule 4-213 with respect to his initial appearance when he was indicted the first time, in Case No. 115124. (See Pet'r's Statement at 4, 6). Respondent contends that Ground One is non-cognizable in federal habeas relief because it asserts a claim based in state law only. (Answer at 14–16).

Maryland Rule 4-213, governing the initial appearance of a defendant, is a creation of state law. "Federal courts may not issue writs of habeas corpus to state prisoners whose confinement does not violate federal law." Wilson v. Corcoran, 561 U.S. 1, 1 (2011). Violation of a state law which does not infringe upon a specific constitutional right is cognizable in federal habeas corpus proceedings only if it amounts to a "fundamental defect which inherently results in a complete miscarriage of justice." Hailey v. Dorsey, 580 F.2d 112, 115 (4th Cir. 1978) (quoting Hill v. United States, 368 U. S. 424, 428 (1962)), cert. denied, 440 U. S. 937 (1979).

Here, the Court does not construe Hart's petition so narrowly that it only asserts a claim based solely in Maryland law. It appears that Hart is asserting that he was denied the right to counsel or the right to be present at his initial appearance. In any event, to the extent Ground One asserts a federal constitutional claim, it lacks merit.

According to his comments at the postconviction hearing, Hart complained that he was not present at his initial appearance and seems to believe that the hearing never occurred. (Suppl. State R. at 56–58). The docket reflects that Hart's initial appearance was

conducted on April 9, 2010. (State R. at 11). Public defender Myra Kovach appeared on Hart's behalf, but Hart was not transported for the hearing. (Id.).

Hart raised Ground One in his postconviction petition. (Suppl. State R. at 27–28). The postconviction court dismissed Ground One because the charges in Case No. 115124 were entered nolle prosequi and because he was represented by counsel during his initial appearance in Case No. 130198. (Id. at 23, 35, 80–81).

The record does not support any claim that Hart was denied the right to counsel at his initial appearance in Case No. 115124. Even if Hart's right to counsel had been violated at the April 9, 2010 hearing, he would not be entitled to habeas relief because he has not demonstrated how he was prejudiced. With respect to an arraignment, the Supreme Court has held that the denial of counsel requires automatic reversal in only two situations: (1) when defenses not pled at arraignment were irretrievably lost, Hamilton v. Alabama, 368 U.S. 52, 53–54 (1961); and (2) when a full admission of guilt entered at an arraignment without counsel was later used against the defendant at trial, despite subsequent withdrawal. White v. Maryland, 373 U.S. 59, 60 (1963) (per curiam). Hart has not alleged any harm resulted from what he believes was the absence of counsel at his initial appearance.

Similarly, violation of the right of a defendant to be present at certain stages of proceedings against him, as with violations of various other constitutional rights, "[is] subject to harmless error analysis." Rushen v. Spain, 464 U.S. 114, 117 n.2 (1983); see also United States v. Muslim, 944 F.3d 154, 160 (4th Cir. 2019). Hart has failed to demonstrate how he was prejudiced by his absence from his initial appearance in Case No.

115124. No evidence was received, and no defenses were waived to Hart's detriment at the initial appearance hearing. Indeed, Hart's guilty plea was vacated, and all charges in that case were entered <u>nolle prosequi</u>. As noted by the postconviction court, Hart was present with counsel for his initial appearance in Case No. 130198, and this was the indictment under which he was ultimately convicted.

### 2. Ground Three: Denial of Right to Counsel in Case No. 130198

Hart argued on direct appeal that the trial court failed to strictly comply with Maryland Rule 4-215(e), which governs the discharge of counsel. "Rule 4-215 exists as a safeguard to the constitutional right to counsel, providing a precise 'checklist' that must be strictly complied with before a defendant's waiver can be considered valid . . . it 'is a bright line rule that requires strict compliance in order for there to be a 'knowing and intelligent' waiver of counsel by a defendant." <u>Richardson v. State</u>, 849 A.2d 487, 498 (Md. 2004) (internal citations omitted).

"[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." <u>Estelle v. McGuire</u>, 502 U.S. 62, 67–68 (1991). Absent violation of a federal constitutional right, a habeas petitioner fails to state a cognizable claim for relief. <u>Wilson v. Corcoran</u>, 562 U.S. 1, 14 (2011) ("Federal courts may not issue writs of habeas corpus to state prisoners whose confinement does not violate federal law.").

Here, Hart cannot obtain habeas relief because the trial court violated a state rule, and Maryland Rule 4-215(e) is not coextensive with the Sixth Amendment. The Sixth Amendment requires no particular interrogation, as long as the court warns the defendant

14

of the dangers of self-representation so that "his choice is made with his eyes open." United States v. King, 582 F.2d 888, 890 (4th Cir. 1978) (quoting Faretta v. California, 422 U.S. 806, 835 (1975)).

The Sixth Amendment implicitly provides an affirmative right to self-representation. See Faretta, 422 U.S. at 819. The right must be preserved even if the court believes that the defendant will benefit from the advice of counsel. See McKaskle v. Wiggins, 465 U.S. 168, 176–77 (1984). "The determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." United States v. Singleton, 107 F.3d 1091, 1097 (4th Cir. 1997) (quoting Johnson v. Zerbst, 304 U.S. 458, 464 (1938)). "A defendant's 'assertion of the right of self-representation . . . must be (1) clear and unequivocal; (2) knowing, intelligent and voluntary; and (3) timely.'" United States v. Roof, 10 F.4th 314, 359 (4th Cir. 2021) (quoting United States v. Frazier-El, 204 F.3d 553, 558 (4th Cir. 2000)). The Fourth Circuit has explained the requirements for a knowing and intelligent waiver of counsel:

> The Supreme Court has not 'prescribed any formula or script to be read to a defendant who states that he elects to proceed without counsel.' But the trial court must nevertheless 'assure itself that the defendant knows the charges against him, the possible punishment and the manner in which an attorney can be of assistance,' as well as 'the dangers and disadvantages of self-representation.' Such a determination is made 'by examining the record as a whole' and 'evaluating the complete profile of the defendant and the circumstances of his decision as known to the trial court at the time.'

Id. (internal citations omitted).

The record demonstrates that the Appellate Court of Maryland did not unreasonably apply federal law when it concluded that Hart knowingly and intelligently waived his right to counsel. (State R. at 226–36). When Hart first raised the issue of discharging the services of his public defender at the July 14, 2016 hearing, the Circuit Court advised Hart that it was not in his best interest to proceed without counsel. (July 14, 2016 Mots. Hr'g at 12). The Circuit Court also advised Hart during the bond reduction portion of the July 14, 2016, hearing that he was facing three consecutive life sentences. (Id. at 27).

When the Circuit Court next took up the issue at the August 25, 2016 hearing, Hart unequivocally advised the trial court that he wanted to represent himself. (Aug. 25, 2016 Mots. Hr'g at 5, 7). Hart repeated that he wanted to represent himself after the trial court advised him that he would receive no assistance from the public defender's office. (Id. at 7).

The record demonstrates that Hart was aware of the charges against him and made a decision to discharge his counsel with full knowledge of the potential consequences. Hart is not entitled to habeas relief on Ground Three because the state court adjudication was not an unreasonable application of any United States Supreme Court precedent. Ground Three will be dismissed for lack of merit.

## C.    Certificate of Appealability

A petitioner may not appeal the dismissal or denial of a federal habeas petition without first receiving a certificate of appealability. 28 U.S.C. § 2253(c)(1)(A). The Court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Under the

controlling standard, a petitioner must show that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336 (2003) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)). For a certificate of appealability to issue, a petitioner need not prove "that some jurists would grant the petition for habeas corpus." <u>Id.</u> at 338. "[W]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." <u>Id.</u> Hart has failed to satisfy this standard on his claims.  Therefore, a certificate of appealability shall not issue.

### III.    CONCLUSION

For the foregoing reasons, Hart's Petition for Writ of Habeas Corpus will be dismissed. A certificate of appealability shall not issue. A separate Order follows.

So ordered this 16th day of September, 2024.

_____/s/_____
George L. Russell, III
Chief United States District Judge